UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SMITHA PATRICE LITTLEJOHN, ) | Civil Action No.: 4:20-cv-02742-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| Kilolo Kijakazi,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for SSI on April 10, 2018, alleging inability to work since March 11, 2017. (Tr. 209). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a rehearing. A hearing was held on July 19, 2019, at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

decision on August 27, 2019, finding that Plaintiff was not disabled. (Tr. 22-36). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on June 22, 2020, making the ALJ's decision the Commissioner's final decision. (Tr. 1-4). Plaintiff filed this action on July 27, 2020. (ECF No. 1).

**B.     Plaintiff's Background and Medical History**

Plaintiff was born on February 17, 1980, and was thirty-eight years old at the time the application was filed. (Tr. 33, 209). Plaintiff alleges disability originally due to lupus, high blood pressure, depression, carpal tunnel, low potassium, acid reflux, and allergies/bronchitis.[2] (Tr. 125). Pertinent medical records will be summarized under the relevant headings.

**C.     The ALJ's Decision**

In the decision of August 27, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 25-36):

1.  The claimant has not engaged in substantial gainful activity since April 10, 2018, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: systemic lupus erythematosus (SLE); left ulnar entrapment; respiratory disorder with ongoing tobacco abuse and obesity (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart

---

[2] Plaintiff had previously filed for disability and disability insurance benefits and received an administratively final unfavorable decision in March 2017. (Tr. 83-96). Plaintiff's appeal of that decision was denied in January 2018. (Tr. 102-05). An earlier determination at any stage in the administrative process may be final-and, thus, binding on subsequent claims-unless the claimant seeks timely review at the next stage. *See, e.g., McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir.1981). Where not reopened, findings on a prior application are conclusive as to that period. 20 C.F.R. 404.987; *McCoy on Behalf of McCoy v. Chater*, 81 F.3d 44, 46 (6th Cir. 1995)(the only relevant evidence was plaintiff's condition after the administratively final decision).

      P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Specifically, over the course of an eight-hour workday, in two hour increments with normal and acceptable work breaks, the claimant can occasionally climb ladders, ropes, and scaffolds, climb ramps and stairs, kneel, crouch, and crawl. The claimant can frequently balance and stoop. Handling can be performed frequently on the nondominant left upper extremity within the exertional level and bilateral fingering can be performed frequently. She can occasionally be exposed to extreme cold, extreme heat, excessive humidity, pulmonary irritants (such as fumes, smoke, odors, dust, gases and poor ventilation), and unprotected hazards associated with unprotected dangerous machinery or unprotected heights. Due to the effects of pain, fatigue, and medications, the claimant can concentrate, persist and maintain pace to understand, remember and carry out unskilled, routine tasks, in a low stress work environment (defined as being free of fast-paced or team dependent production requirements), involving the application of commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. She can deal with problems involving several concrete variables in or from standardized situations. The claimant can adapt to occasional workplace changes.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on February 17, 1980 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 10, 2018, the date the application was filed (20 CFR 416.920(g)).

## II. DISCUSSION

Plaintiff argues that the ALJ erred in failing to discuss the findings of the ALJ from her previous social security matter and in determining the RFC. Defendant argues substantial evidence

supports the ALJ's decision.

A.   **LEGAL FRAMEWORK**

   1.   **The Commissioner's Determination-of-Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity (SGA); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing past relevant work

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

(PRW);[4] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling (SSR) 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

---

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Residual Functional Capacity**

Plaintiff argues the ALJ failed to explain how the RFC sufficiently accounted for the time required for her infusion treatments. Defendant argues that Plaintiff's infusion treatments would not interfere with her ability to work, and thus, the treatments did not need to be considered in the RFC.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

During the hearing, Plaintiff testified that she gets infusion treatments every four weeks to help with her lupus symptoms. (Tr. 57-58). Plaintiff testified:

> Q And from the time that you go to the infusion it - - until the time that you're finished with it, how long does that take?
> A Like day and a half.
>
> Q When you say a day and half, is that -- you talking about after you have the infusion --
> A After, yeah.
>
> Q -- like feeling better or what are you talking about?
> A Feeling non-drowsy back to my normal ability.
> Q You say feeling non-drowsy
> A Mm-hmm.
> A It made me tired and drowsy.
> Q The infusions do?
> A Mm-hmm.
>
> ALJ: That's the next or immediately thereafter?
> CLMT: After and the next day.

(Tr. 57-58). In response to a hypothetical the ALJ posed regarding allowable absences from work, the VE testified: "It's my opinion that one absence a month would be the most tolerated. This could be unscheduled or . . . calling in late or leaving early . . . ." (Tr. 75). The VE testified that Plaintiff could perform the same jobs if she were absent one day a month. (Tr. 75). When the ALJ added additional conditions that the hypothetical individual would be off task twenty-five percent of the time and would be absent two or more days a month, the VE opined that such additional conditions would preclude competitive employment. (Tr. 75-76). Plaintiff's attorney then had the following exchange:

> ATTY: And my next hypothetical is this, and this applies to either hypotheticals number one or two. If the individual were to say be absent for a day and a half, and I get that there's not necessarily half days, so to speak. But let's say they had to leave **three to four hours on one day and they wouldn't be there the next day.**
> ALJ: I kind of concluded that in two days out, but go ahead if you
> ATTY: Yeah, I just want to I just want to clarify absolutely for the record.
> ALH: Yeah, okay. Okay.
> ATTY: Would that be violative of the employer allowable absences?
> VE: In my opinion, that would require prior notice. If prior notice were given and the

> employer were aware, it would not necessarily preclude employment. If it occurred regularly and unscheduled, it would preclude.

(Tr. 80)(emphasis added).

In the decision, the ALJ credited Plaintiff's infusion treatments as supportive of her lupus-related allegations. (Tr. 31). However, he only indicated that the treatments lasted an hour and a half and did not discuss Plaintiff's testimony that she had drowsiness for about a day and a half after the treatments. (*See* Tr. 31). Plaintiff argues it was error for the ALJ not to include a restriction in the RFC regarding Plaintiff's absences due to her infusions or a discussion as to why no such restriction was needed. (ECF No. 18 at 9). Defendant disagrees, relying upon the VE's testimony that an absence for a day and a half would only preclude work if it was unscheduled and further offering that Plaintiff could schedule her infusions on the day before her day off such that her recovery would not cause her to be absent from work. (ECF No. 19 at 10).

Initially, Defendant's argument that Plaintiff could simply schedule her infusions the day before her day off is entirely speculative and post hoc and cannot be considered here. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio v. Colvin*, 780 F.3d

632, 637-40 (4th Cir. 2015). There is arguably unresolved conflicting evidence in the record regarding the timing and side effects of Plaintiff's infusion treatments. The VE testified that one absence was the most that would be tolerated, that two or more days of absence would preclude employment if an individual was also off task for a quarter of the time, and that a scheduled, day-and-a-half absence would not necessarily preclude employment. Yet, the RFC only acknowledged Plaintiff's need for monthly, hour-and-a-half infusion treatments without any further discussion as to what side effects or recovery, if any, was necessary after those treatments or how Plaintiff's need to be absent from work for her infusions would affect the RFC. The extent that Plaintiff's monthly infusions would impact her ability to work on a sustained and continuing basis should have been discussed. Without any discussion in the decision to that effect, the court is constrained to conclude substantial evidence does not support the ALJ's findings. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator."). As such, remand is appropriate. *Mascio*, 780 F.3d at 636-37 (4th Cir. 2015) ("[W]e agree with the Second Circuit that '[r]emand may be appropriate . . . where other inadequacies in the ALJ's analysis frustrate meaningful review.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam))).

In light of the court's finding that this matter should be remanded for further consideration, the court need not address Plaintiff's remaining issues. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, although the remaining issue of the ALJ's failure to consider the prior ALJ's decision may be harmless, the ALJ should take into consideration Plaintiff's remaining allegations of error, including but not limited to, the prior ALJ's findings in accordance with

Acquiescence Ruling (AR) 00-1(4).

### III.  CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). As discussed above, the ALJ's decision is not based on substantial evidence.[5]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)). "The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his

---

[5] Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

decision is supported by substantial evidence approaches an abdication of the court's duty....")).

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

October 6, 2021
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge